# United States Court of Appeals
## For the First Circuit

No. 99-1192

CLAUDIO GONZALEZ-MORALES, ISABEL MATEO,
CONJUGAL PARTNERSHIP OF GONZALEZ-MATEO,
AND LA AMERICANA HOME CENTER & DISTRIBUTING CO., INC.

Plaintiffs, Appellants,

v.

RENE HERNANDEZ-ARENCIBIA, JANE DOE, AND
CONJUGAL PARTNERSHIP OF HERNANDEZ-DOE,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jose Antonio Fusté, U.S. District Judge]

Before

Torruella, Chief Judge
Selya and Lipez, Circuit Judges.

Pablo J. Santiago-Hernández on brief for appellants.
Jorge A. Fernández-Reboredo on brief with Rivera &
Fernández-Reboredo for appellees.

August 14, 2000

**LIPEZ, Circuit Judge**.  This convoluted dispute arises out of Rene Hernández-Arencibia's efforts to collect on a promissory note signed by Claudio González-Morales and Isabel Mateo-González to finance their hardware concern, La Americana Home Center & Distributing Co., Inc ("La Americana").[1]  To recover the allegedly outstanding debt, Hernández filed suit in the San Juan Superior Court for the Commonwealth of Puerto Rico and obtained an ex parte attachment order.  With these Puerto Rico proceedings ongoing, the Gonzálezes sued Hernández, his wife "Jane Doe," and their conjugal partnership[2] in federal court, claiming that the attachment of their property violated the due process clause of the Fourteenth Amendment, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. (RICO), and Puerto Rico law.  The district court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for "failure to state a claim upon which relief can be granted."  We now affirm.

---

[1]The Gonzálezes, their conjugal partnership, and La Americana (which the Gonzálezes own) are all plaintiffs in this suit. For ease of reference, we refer to the plaintiffs collectively as the Gonzálezes.

[2]The complaint alleges on information and belief that Hernández is married to a "Jane Doe . . . who is presumptively the co-administrator of the conjugal partnership." Complaint ¶ 5.  As the complaint exclusively challenges Hernández's conduct, we simply refer to Hernández.

We recite the facts as alleged in the complaint. See Langadinos v. American Airlines, 199 F.3d 68, 69 (1st Cir. 2000). Claudio and Isabel González purchased a hardware business from Maderera Hato Rey, Inc. ("Maderera"), a retailer of lumber and construction materials owned by Hernández. As part of the purchase, the Gonzálezes personally guaranteed a $400,000 promissory note, with requirements of monthly payments and payment of the balance due on July 31, 1995. Unable to make all payments, the Gonzálezes owed about $50,000 at the time the note was due. As a result, Hernández filed several suits in the Puerto Rico courts, including suits to evict La Americana from its rented premises (filed by Pego Realty Corp., owned by Hernández), a suit for rent, and a suit to recover the promissory note debt (filed by Hernández personally).

When Hernández filed suit to collect on the promissory note, he simultaneously moved for an ex parte attachment of the Gonzálezes' property. The Puerto Rico court ordered Hernández "to show by authentic means the existence of indebtedness [and] that it is for an amount certain, payable on demand, and due" and also to show "the extraordinary circumstances that would warrant the attachment writ be granted without a hearing." Hernández filed a motion in compliance, offering the contract

-4-

for the sale of the hardware business (which included the terms of the promissory note), a document allegedly establishing Hernández's rights to collect on the note, and a sworn affidavit. The court granted a writ of attachment and Hernández seized various equipment from La Americana. Following the attachment, the court evaluated motions and heard argument as to whether Hernández could personally collect on a promissory note issued to his company, Maderera, an issue which turned on whether the note had properly been assigned to Hernández. The court eventually determined that Hernández had made a sufficient showing to move forward and that the attachment would remain in effect until "testimonial proof is heard." Although the complaint is unclear, at some point Hernández apparently posted a bond in connection with the attachment.

The Gonzálezes then brought the instant suit in federal court, arguing that Hernández had violated their constitutional rights (a claim brought under 42 U.S.C. § 1983), RICO, and a number of Puerto Rico laws. The district court dismissed the suit for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), because the Gonzálezes had not demonstrated state action as required by § 1983 and because they had failed to allege facts sufficient to establish a RICO violation. As no federal claims had been properly pled, the

district court dismissed the Puerto Rico law counts.  See

Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).

The Gonzálezes filed a motion to alter or amend the judgment,

arguing, inter alia, that Hernández was a "state actor" because

he used attachment procedures that the Supreme Court of Puerto

Rico had declared unconstitutional in Rivera v. Stowell, 93

J.T.S. 111 (1993).  Rejecting this view, the trial court denied

the motion.  On appeal, the Gonzálezes argue that the district

court erred in dismissing their claim that the attachment

violated due process and their RICO claim.[3]

        Our review under Rule 12(b)(6) is plenary.  See

Langadinos, 199 F.3d at 69. "[W]e may affirm a dismissal for

failure to state a claim only if it clearly appears, according

to the facts alleged, that the plaintiff cannot recover on any

viable    theory."    Id.    (quoting    Correa-Martinez    v.

Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

**II.**

        The Gonzálezes allege that Hernández violated their due

process rights by attaching their property.  They invoke 42

---

[3]The Gonzálezes' brief focuses exclusively on the attachment
and RICO issues.  While the Gonzálezes' assert that "the amended
complaint contains other distinct actionable claims under §
1983,"  they fail to develop any argument in favor of these
supposed other claims. See United States v. Hughes, 211 F.3d
676, 684 n.6 (1st Cir. 2000) (party waives issue by failing to
develop argument).

U.S.C. § 1983, which provides a cause of action for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Section 1983, however, does not provide relief against most private individuals: the deprivation must be caused by a person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." Id. As the "color of" law requirement restricts § 1983 to "state action," Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982), the alleged deprivation must be "fairly attributable to the State," id. at 937.

The "fair attribution" test requires both a state policy and a state actor. The state policy component requires that the deprivation "be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." Id. at 940. The state actor component requires that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. 940-41; accord Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252, 258 (1st Cir. 1992). A defendant may be a state actor because he is a state official, because he acted together with a state official, or

because his conduct is otherwise chargeable to the State. See Casa Marie, 988 F.2d at 258.

Citing Lugar, the Gonzálezes argue that Hernández can be sued under § 1983 because he used the state courts to attach their property unconstitutionally. Although "something more than mere resort to a state court is required" to transform a § 1983 defendant into a state actor, Casa Marie, 988 F.2d at 259, Lugar makes clear that in some circumstances the private use of a state's attachment proceedings can give rise to a § 1983 claim. See 457 U.S. at 941. The Supreme Court stated:

> While private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by that statute obviously is the product of state action. This is subject to constitutional restraints and may be properly addressed in a § 1983 action, if the second element of the state-action requirement [a "state actor"] is met as well.

Id. Applying this dichotomy, the Supreme Court held that the count of the petitioner's complaint which attacked the attachment as "malicious, wanton, willful, opressive [sic], [and] unlawful", did not state a constitutional claim since it only alleged the private misuse of the state procedures. Id. at 940. A second count of the complaint, however, challenged the state statute as procedurally defective under the Fourteenth Amendment. See id. at 940-41. The fact that the challenged

-8-

scheme allowed a private party to invoke the state power of attachment upon ex parte application created a sufficient nexus between state and individual to demonstrate state action and permit a § 1983 suit against the individual who sought the attachment. See id. at 942.

The Gonzálezes claim that they too have alleged reliance by the defendants on unconstitutional attachment procedures because Puerto Rico Civil Procedure Rule 56.4, governing ex parte attachments, is unconstitutional. Rule 56.4's language does not explicitly require a showing of either exigent circumstances or documentary proof that a debt is due. See Connecticut v. Doehr, 501 U.S. 1, 18 (1991) (holding that attachment statute allowing tort plaintiff to attach property ex parte without a showing of exigent circumstances violated due process); Mitchell v. W.T. Grant Co., 416 U.S. 600, 609 (1974) (noting that ex parte procedure requiring documentary proof of debt due provides due process). In Rivera v. Stowell, 93 JTS 111 (1993), the Supreme Court of Puerto Rico recognized the difficulties with Rule 56.4's language:

> Rule 56.4 currently in force is unconstitutional inasmuch as it permits that a court issue an attachment order, without holding a previous hearing, in those situations in which the claimant: has not alleged or demonstrated having a previous proprietary interest in the attached object, Mitchell, ante; has not alleged or

-9-

> demonstrated the existence of extraordinary circumstances, <u>Doehr</u>, ante; nor has alleged or demonstrated the possibility of prevailing by means of documentary proof whereby it may be established the debt is determinate, due and payable on demand. Only in these three situations may a Court defer holding such a hearing after the attachment has been effected.[4]

While <u>Rivera</u> makes plain that some applications of Rule 56.4 are constitutionally deficient, the Gonzálezes cannot state a § 1983 claim by citing those deficiencies. Instead, they must allege constitutional deficiencies in the ex parte procedures used to attach their property. The Gonzálezes' complaint makes clear that in this case the court required Hernández to demonstrate both proof of debt and exigent circumstances before authorizing the ex parte attachment. The complaint states that the Court issued the following order:

> In 15 days the party plaintiff (that is: Hernández) shall strictly comply with

---

[4]We note that the parties failed to provide a translation of <u>Rivera</u> as we require. <u>See</u> Local Rule 30(d) ("Whenever an opinion of the Supreme Court of Puerto Rico is cited in a brief or oral argument which does not appear in the bound volumes in English, an official, certified or stipulated translation thereof . . . shall be filed."). While "we may commission unofficial translations and impose on the offending parties the costs incurred and, where appropriate, sanctions," <u>Lama</u> v. <u>Borras</u>, 16 F.3d 473, 478 n.6 (1st Cir. 1994), in this case we simply rely on the quotations in the parties' briefs. To the extent that the Gonzálezes would offer additional arguments based on portions of the <u>Rivera</u> opinion that they did not translate, they waive those arguments by failing to provide the translation.

> *Rivera* v. *Stowell,* 93 J.T.S. 111 and show by
> authentic means (fehacientemente) the
> existence of the indebtedness, that is for
> an amount certain, payable on demand, and
> due, etc. See 93 JTS page 10934. In the
> same fashion [Hernández] must show by his
> sworn statement the extraordinary
> circumstances that would warrant that the
> attachment writ be granted without a
> hearing.

Complaint ¶ 14. In order to establish state action, the complaint must at least allege that these attachment procedures were unconstitutional.[5]

The Gonzálezes do not argue that the trial court's decision to require proof of indebtedness and exigent circumstances violated their constitutional rights. Instead, the adjective-laden and often repetitive allegations of the thirty-six page complaint challenge the attachment proceedings on three other grounds that are not actionable under § 1983. First, the Gonzálezes challenge Hernández's allegedly bad motives in moving for the attachment, arguing that Hernández sought the attachment to "vex, annoy, and harass the

_____

[5]Of course, "[t]he court is not required to accept legal conclusions as true when considering a motion to dismiss." *New England Cleaning Servs., Inc.* v. *American Arbitration Assoc.*, 199 F.3d 542, 545 (1st Cir. 1999). Thus, a court could still dismiss the Gonzálezes' complaint under Rule 12(b)(6) on the ground that the procedures described in the complaint did not, as a matter of law, violate due process. We need not explore this issue, as the Gonzálezes fail even to allege that the procedures actually used by the Puerto Rico court were constitutionally defective.

plaintiffs," Complaint ¶ 6, and to "cause economic harm . . . and humiliate" them, id. ¶ 7. Second, the Gonzálezes allege that Hernández lied to the court to obtain the attachment. The complaint accuses Hernández of "false representations, spurious documents, and brazen trickery," id. ¶ 89, and states that "the defendant at all times knew, willfully ignored, and kept from the Court" the fact that the attachment was inappropriate, id. ¶ 7. Third, the Gonzálezes challenge the evidentiary basis for the court's decision, pointing to supposed deficiencies in the proof on exigent circumstances and the existence of a debt, see id. ¶¶ 8, 79-81, 86-88, 96-97.[6]

At bottom, then, the Gonzálezes allege nothing more than improper motives and misrepresentations on the part of Hernández and an incorrect assessment of evidence by the Puerto Rico court. While the Gonzálezes point to problems with Puerto Rico Civil Procedure Rule 56.4, they do not challenge the Rivera procedures actually employed by the trial court.[7] As a result,

_____

[6]Challenges to the Puerto Rico court's evaluation of evidence, as the district court noted, are "obviously inappropriate." See generally Hill v. Town of Conway, 193 F.3d 33, 41 (1st Cir. 1999) ("[F]ederal courts do not have jurisdiction pursuant to § 1983 to review the judgments and decisions of state courts." (quoting Erwin Chemerinsky, Federal Jurisdiction 423 (1994))).

[7]Although the Gonzálezes imply that the court's post-attachment hearings were inadequate, the constitutional challenge in the complaint is not directed at this issue and the

-12-

the § 1983 complaint against Hernández was properly dismissed for a lack of state action.  See Gene Thompson Lumber Co. v. Davis Parmer  Lumber Co., 984 F.2d 401, 404 (11th Cir. 1993) (no § 1983 claim for mere misuse of attachment procedures); Jones v. Poindexter, 903 F.2d 1006, 1011 (4th Cir. 1990) (same, regarding misuse of state process); Hassett v. LeMay Bank & Trust Co., 851 F.2d 1127, 1130 (8th Cir. 1988) (same, regarding misuse of replevin).

## III.

The Gonzálezes also argue that the district court erred in dismissing their RICO claim.  See 18 U.S.C. 1962(c).  In pertinent part, § 1962(c) reads as follows:

> It shall be unlawful for any person employed
> by or associated with any enterprise engaged
> in, or the activities of which affect,
> interstate or foreign commerce, to conduct
> or participate, directly or indirectly, in
> the conduct of such enterprises's affairs
> through a pattern of racketeering activity
> or collection of unlawful debt.

---

Gonzálezes fail to offer developed argument on this point. See Complaint ¶¶ 95-97; see also Doyle v. Hasbro, 103 F.3d 186, 190 (1st Cir. 1996) ("In conducting our review of the case, we are limited to those allegations contained in the amended complaint."); United States v. Hughes, 211 F.3d 676, 684 n.6 (1st Cir. 2000) (arguments not developed are waived).

To establish a "pattern of racketeering activity," the RICO plaintiff must point to at least two predicate acts enumerated in 18 U.S.C. § 1961(1).  See Feinstein v. Resolution Trust Corp., 942 F.2d 34, 41 (1st Cir. 1991).  However, "[r]acketeering acts . . . do not constitute a pattern simply because they number two or more." Roeder v. Alpha Indus., Inc., 814 F.2d 22, 30 (1st Cir. 1987); see Fleet Credit Corp. v. Sion, 893 F.2d 441, 444 (1st Cir. 1990).  The plaintiff must also show that the acts are related and that they demonstrate a threat of continued criminal activity.  See H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989).

The Gonzálezes allege that the pattern of racketeering activity consisted of "extortion" and "attempted extortion" through the filing of various suits in response to the non-payment of the promissory note.  See § 1961(1)(A) (racketeering activity includes "any act or threat involving . . . extortion . . . which is chargeable under State law and punishable by imprisonment for more than one year").[8]  Although we will assume that the filing of frivolous suits may constitute RICO extortion

_____

[8]The Gonzálezes also point to "predicate acts" of assault, illegal eviction from their property, and fraud under Puerto Rico law in obtaining the attachment.  These violations, however, are not enumerated as predicate acts under § 1961(1) (listing criminal activity that can be considered predicate act for RICO purposes).

-14-

in some instances, see, e.g., Lemelson v. Wang Labs., Inc., 874 F. Supp 430, 433 (D. Mass. 1994), in this case the Gonzálezes do not make out the kind of pattern that poses "a threat of continued criminal activity." H.J. Inc., 492 U.S. at 239. Courts "have consistently held that a single episode does not constitute a 'pattern,' even if that single episode involves behavior that amounts to several crimes (for example, several unlawful mailings)." Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992) (Breyer, C.J.). "Instead, courts have tended to find RICO 'patterns' only where the defendant's conduct consists of 'multiple criminal episodes' over long periods of time." Schultz v Rhode Island Hospital Trust Nat'l Bank, N.A., 94 F.3d 721, 731-32 (1st Cir. 1996); see also H.J. Inc., 492 U.S. at 242 ("Congress was concerned in RICO with long-term criminal conduct.").

As the Gonzálezes acknowledge in the complaint, all of the "predicate acts . . . have their origin in the forementioned [sic] Contract for Purchase of Assets." Complaint ¶ 103. The mere fact that separate proceedings were instituted (one to evict La Americana from the rental property, another to collect on the promissory note, etc.) does not convert what is essentially a single episode into the kind of pattern that demonstrates a threat of continued activity. See J.D. Marshall

-15-

Int'l Inc., v. Redstart, Inc., 935 F.2d 815, 820-21 (7th Cir. 1991) (no pattern in "a single scheme . . . involv[ing] a single victim . . . predicated upon a single transaction--the Purchase Agreement."); SIL-SLO Inc. v. SFHC, Inc., 917 F.2d 1507, 1516 (10th Cir. 1990) ("At most, what has been alleged is a business deal gone sour . . . constitut[ing] a single scheme to accomplish one discrete goal, directed at one individual with no potential to extend to other persons or entities."). Similarly, the fact that some of the local court suits are still pending does not constitute long-term conduct demonstrating a threat of future activity. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1417-19 (3d Cir. 1991) ("[I]t is of little importance that a particular injury was inflicted over an extended period of time, rather than all at once."); United States Textiles, Inc. v. Anheuser-Busch Cos., 911 F.2d 1261, 1269 (7th Cir. 1990) ("[I]dentical economic injuries . . . stemming from a single contract were not the type of injuries which Congress intended to compensate via the civil provisions of RICO.").

In short, the Gonzálezes have not alleged a pattern of racketeering activity. Thus, we need not address whether the other elements of RICO (such as the allegation of an "enterprise") were pled appropriately. The RICO claim was properly dismissed.

**<u>Affirmed.</u>**