Ramon MORETA–RAMIREZ,
et. al., Plaintiffs,

v.

Bonnie LEMERT, et. al., Defendants.

No. CIV. 00–1103(SEC).

United States District Court,
D. Puerto Rico.

July 18, 2001.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for Plaintiffs.

Arlene De la Mata–Melendez, Gaztambide & Plaza, San Juan, PR, Jaime Marcial–Falcon, San Juan, PR, Fidel A. Sevillano–Del–Rio, Lisa E. Bhatia–Gautier, U.S. Attorney's Office District of P.R., Civil Division, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court are defendants Bonnie Lemert, Richard Roark, Rodolfo Salcedo, and Luis Ortiz's motion to dismiss. (Docket # 11)[1]. Also pending before the Court in a related motion is Defendant Ismael Rodríguez's motion to dismiss. (Docket # 17).[2] For the reasons stated below both motions are **GRANTED IN PART.** Plaintiffs' claims under the

Fifth and Fourteenth Amendment to the U.S. Constitution shall be dismissed consistent with this opinion.

## I. Background

Plaintiffs, Ramón Moreta–Ramírez and Leopoldo Moreta–Ramírez, (hereinafter "Plaintiffs"), filed a civil rights complaint on January 25, 2000, against Ismael Rodríguez, Richard Roark, and Rodolfo Salcedo, all acting investigators of the U.S. Customs Service; Luis Ortiz, an acting Task Force Agent of the U.S. Customs Service; and Bonnie Lemert, the Area Port Director of the U.S. Customs Service and commanding officer of the other defendants. (Docket # 1 ¶¶ 4–10). In their complaint Plaintiffs allege that they were wrongfully and unlawfully arrested and prosecuted by the above-mentioned defendants, who negligently or intentionally:

1. Concealed the fact that the address in a cardboard box sent from Cali, Colombia to San Juan, Puerto Rico, via Airborne Express, was not addressed to an existing and verified address. (Docket # 1 ¶¶ 15–8). The box in question contained seven religious candles made of a wax which reacted positive to the presence of cocaine. (*Id.* ¶ 12).

2. The fact that the address in the cardboard box did not exist was allegedly omitted from defendants' statements and testimony, including their official reports of the investigation concerning the box. (*Id.* ¶¶ 18–9).

3. Plaintiffs further alleged that defendants Ismael Rodríguez, Richard Roark, Rodolfo Salcedo, and Luis Ortiz advised, assisted, and ratified

---

1. This motion was opposed by the plaintiffs on November 30, 2000, (Docket # 13), and a reply brief was filed by the defendants on December 22, 2000. (Docket # 18).

2. This motion was opposed by the plaintiffs on December 28, 2000. (Docket # 19). No reply briefs were filed.

to a Federal Magistrate–Judge that the box was connected to Plaintiff's Ramon Moreta's residence, for purposes of a search warrant. (*Id.* at ¶¶ 20–2).

4. In addition, Plaintiffs alleged that defendant Ismael Rodríguez "testified falsely before a grand jury," (*Id.* at ¶ 23), and that he "concealed and lied about a number of details of the controlled delivery of the box, including, but not limited to: (a) that the airway bill depicted an incorrect address; and (b) that the plaintiffs' waived their Miranda rights and gave exculpatory statements." (*Id.* at ¶ 24).

5. As a result of those acts, Plaintiffs allege that they were arrested without probable cause to believe they had committed a crime, and were held in custody continuously until July 17, 1999. (*Id.* at ¶¶ 27–8). The charges were eventually dismissed, on June 17, 1999. (*Id.* at ¶ 29).[3]

Defendants Bonnie Lemert, Richard Roark, Rodolfo Salcedo, and Luis Ortiz moved to dismiss the complaint on grounds that: (1) Plaintiffs' complaint should be interpreted pursuant to the Fourth Amendment and not due process; (2) the doctrine of qualified immunity applies to these defendants; (3) under a totality of the circumstances standard, the Magistrate–Judge's finding of probable cause prevails; (4) Co-defendants Bonnie Lemert, Richard Roark, Rodolfo Salcedo, and Luis Ortiz did not personally procure the search warrant.

Defendant Ismael Rodríguez filed a separate motion to dismiss, (Docket # 17), on grounds of: (1) Fourth Amendment, (2) Qualified Immunity, and (3) an argument that the alleged omissions by the affiant do not amount to a Fourth Amendment violation.

## II. Legal Analysis–Motion to Dismiss Standard

In assessing whether dismissal for failure to state a claim is appropriate, "the trial court, must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." *LaChapelle v. Berkshire Life Ins. Co.,* 142 F.3d 507, 508 (1st Cir.1998) (citations omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *quoted in Davis v. Monroe County Bd. of Education,* 526 U.S. 629, 119 S.Ct. 1661, 1676, 143 L.Ed.2d 839 (1999). *See also Correa–Martinez v. Arrillaga–Beléndez,* 903 F.2d 49, 52 (1st Cir.1990) (dismissal for failure to state a claim is warranted "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory").

But "[a]lthough this standard is diaphanous, it is not a virtual mirage." *Berner v. Delahanty,* 129 F.3d 20, 25 (1st Cir.1997) (quoting *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 515 (1st Cir.1988)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.*

---

**3.** On a motion to dismiss, the Court "recite[s] the facts as alleged in the complaint." *Gonzalez–Morales v. Hernandez–Arencibia,* 221 F.3d 45, 47 (1st Cir.2000) (citing *Langadinos v. American Airlines,* 199 F.3d 68, 69 (1st Cir.2000)).

In judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." *LaChapelle,* 142 F.3d at 508 (quoting *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir. 1996)). *See also Rogan v. Menino,* 175 F.3d 75, 77 (1st Cir.1999). Courts, moreover, "will not accept a complainant's unsupported conclusions or interpretations of law." *Washington Legal Foundation v. Massachusetts Bar Foundation,* 993 F.2d 962, 971 (1st Cir.1993). Yet courts must bear in mind that apart from allegations of civil rights or RICO violations, fraud, mistake or standing, which are not implicated here, "it is enough for a plaintiff to sketch an actionable claim by means of a generalized statement of facts from which the defendant will be able to frame a responsive pleading." *Langadinos v. American Airlines, Inc.,* 199 F.3d 68, 73 (1st Cir. 2000) (quoting *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank,* 958 F.2d 15, 17 (1st Cir.1992) (internal quotation, marks omitted)). In so doing, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information and belief.'" *Id.*

### Fourth Amendment

■ Civil claims based on unreasonable searches and seizures are controlled by the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized that the violation of the Fourth Amendment by federal agents is redressible through an action for money damages against the federal agents. Similar claims have been dismissed however, when they have been brought pursuant to a theory of substantive due process. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (dismissal of plaintiff's § 1983 claim for arrest without probable cause sustained, on grounds that plaintiff did not state a cognizable constitutional violation under substantive due process).

■ Plaintiffs' complaint claims compensatory and punitive damages against federal agents "in their personal and individual capacities" for the violation of their "rights to be free from a prosecution without probable cause." (Dkt. # 1 ¶ 1). Plaintiffs cite the protections of the Fourth, Fifth and Fourteenth Amendment to the U.S. Constitution. (*Id.*). Plaintiffs also cite the *Bivens* case. (*Id.* ¶ 2). According to the doctrine examined above, Plaintiffs' claims under the Fourth Amendment are actionable and survive a motion to dismiss on these grounds.

Plaintiffs also argue that they stated a claim for the *post-arrest* failure of the police agents to disclose favorable and exculpatory evidence to the criminal justice system. In particular, they alleged that the Defendants failed to inform and concealed to the Grand Jury, the United States Attorney, and the Criminal Justice System, the true facts surrounding the controlled delivery of the box. (Docket # 1 ¶¶ 25–30). It is unclear from Plaintiffs' complaint and opposing memorandum, under what constitutional theory they claim redress. They cite *Jean v. Collins,* 107 F.3d 1111 (4th Cir.1997), *vacated on reh'g en banc,* 155 F.3d 701 (4th Cir.1998), *vacated,* 526 U.S. 1142, 119 S.Ct. 2016, 143 L.Ed.2d 1029 (1999), *district court aff'd. by an equally divided en banc court,* 221 F.3d 656 (4th Cir.2000), *cert. denied,* 531 U.S. 1076, 121 S.Ct. 771, 148 L.Ed.2d 671 (2001), and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

■ In *Brady,* the Supreme Court held that "the suppression by the prosecution of

evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 85, 83 S.Ct. 1194. Clearly, the duty to disclose established by *Brady,* is imposed on the prosecution. *Brady* does not express a view as to the duty of police officers to disclose exculpatory evidence. *See e.g. Jean v. Collins,* 221 F.3d at 660 and cases cited therein. ·

In fact, the existence of a constitutionally-derived liability on the part of police officers for failure to disclose and the contours of such liability are not clearly established. In *Jean v. Collins,* the Fourth Circuit explored the reach of *Brady* in the context of a § 1983 action against police officers alleged to have covered potentially exculpatory and impeachment evidence from the prosecution and consequently, from the defendants. 221 F.3d 656. The Fourth Circuit, sitting *en banc,* was equally divided on the issue. Six Circuit Judges declined to find the police liable in that case finding that "it would be impermissible to hold the police liable for due process violations under § 1983 where they have acted in good faith." *Id.* at 660. In addition, the concurring judges found that:

> [T]he law has already placed ultimate responsibility upon the prosecutor for disclosing *Brady* material to the defense. When *Brady* violations occur, criminal defendants may have their convictions overturned. Because police knowledge is plainly imputed to the prosecution for purposes of the prosecutor's *Brady* duties, the prosecutor bears the responsibility for implementing procedures designed to ensure that police officers turn over all evidence to him ...

*Id.* at 661.

Six other Circuit Judges disagreed. Five wrote a joint dissent expressing that § 1983 "is simply a remedial mechanism for vindicating rights with independent constitutional foundations." *Id.* at 664 (dissenting judges *en banc* ). In this situation, the dissenting judges expressed, the constitutional duty established by *Brady* is only one, which falls equally on prosecutors and police officers. The police officers' obligation however, is one of ministerial nature, reflecting their role in the criminal justice system. Their duty is to accumulate the evidence and ministerially deliver it to the prosecutor. "The prosecutor then makes a judgment about whether the evidence is material and exculpatory, such that *Brady* compels its disclosure to the defendant. This functional differentiation, however, should not obscure the fact that *Brady* creates a singular constitutional *duty* which prosecutors and police officers are capable of *breaching* in factually different ways." *Id.*

■ As can be evidenced by the remarkable split among the judges of the Fourth Circuit sitting *en banc,* the constitutional right claimed by the Plaintiffs is not currently recognized and it is of a debatable nature. The First Circuit has not been confronted with a similar issue, and a perusal of the Supreme Court case law reveals that the *Brady* duty is strictly imposed on the prosecution. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194 ("suppression by the prosecution of evidence favorable to an accused upon request violates due process."), *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("whether the nondisclosure was a result of negligence or design, it is the responsibility of the prosecutor."); *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) ("the prosecution, which alone can know what is undisclosed, must be assigned the consequent

responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached."). Accordingly, Defendants' motions to dismiss, (Dkts. ## 11, 17), on Fourth Amendment grounds are **GRANTED IN PART.** Defendant's claims under the Fifth and Fourteenth Amendment are **DISMISSED** and judgment shall be entered accordingly.

## Qualified Immunity

■ Defendants invoke the doctrine of qualified immunity in support of their motion to dismiss. The defense of qualified immunity is available to federal officials acting in the scope of their employment. It protects them from liability arising from discretionary action within the scope of their employment, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Interpreting *Harlow,* the First Circuit has established a three-part inquiry to determine whether or not the doctrine of qualified immunity applies in a given situation.

First, the district court "must determine whether the plaintiff has alleged the deprivation of an actual constitutional right," *Abreu–Guzmán v. Ford,* 241 F.3d 69, 73 (1st Cir.2001) (quoting *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)), then "the court must proceed to determine whether that right was clearly established at the time of the alleged violation." *Id.* If these two questions are answered in the affirmative, the court then proceeds to determine "whether an objectively reasonable officer, performing discretionary functions, would have understood his or her conduct violated that clearly established constitutional right."

*Id.* (citing *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727).

■ In this case, the answer to the first two inquiries is in the affirmative. Since *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court has recognized that the use of false statements to obtain a warrant violates the Fourth Amendment. Plaintiff has alleged the violation of the Fourth Amendment right to have a warrant issued only upon probable cause. This is a recognized constitutional right clearly established at the time of the alleged violation. The complaint contains enough allegations of fact which, if proven at trial, might establish that an objectively reasonable officer, performing discretionary functions, would have understood their conduct to violate Plaintiff's constitutional rights under the Fourth Amendment. At this stage, the Court cannot go any further. Accordingly, Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim on grounds of qualified immunity is **DENIED.**

## Defendants not Applying for Search Warrant

Co-defendants Bonnie Lemert, Richard Roark, Rodolfo Salcedo and Luis Ortiz moved to dismiss on grounds that they did not commit a constitutional violation. They argue that because they did not procure the search warrant at issue, they are not liable for the alleged omissions and misrepresentations made to the U.S. Magistrate–Judge. They cite the cases of *Salmon v. Schwarz,* 948 F.2d 1131 (10th Cir.1991), and *Morris v. Tehama County,* 795 F.2d 791 (9th Cir.1986), in support of the statement that "only the party who actually applies for an allegedly false unlawful warrant may be held liable for its subsequent issuance." (Dkt. # 11 ¶ 10). These cases do not stand for that proposition however.

In *Salmon v. Schwarz*, 948 F.2d at 1140–41, the Tenth Circuit entered summary judgment for a defendant who participated in the execution of an illegally obtained search warrant, but who did not participate in its procurement. The Court found that the officer was entitled to qualified immunity because he relied in the facial validity of the warrant.

In *Morris v. Tehama County*, 795 F.2d at 795, the Ninth Circuit relied on *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), for stating that "a police officer called upon to execute an arrest warrant is entitled to assume that the warrant was validly obtained." *Morris*, 795 F.2d at 795. In that case, Plaintiffs claimed liability against a police officer exclusively based on his involvement in the execution of an allegedly illegal warrant. The officer was not involved in securing the warrant. He did not participate in the pre-warrant search, nor appeared before the issuing judge. Therefore, the court found that "for purposes of section 1983 immunity, an officer is entitled to assume the validity of a search warrant secured by fellow officers. [That officer's] immunity need not have been predicated upon anything more than his reasonable ignorance of the circumstances by which the warrant was secured." *Id.*

■ The case at bar is factually distinguishable from those cited by the Defendants. In this case Plaintiffs have alleged that officers Richard Roark, Rodolfo Salcedo and Luis Ortiz were part of the investigative team that ascertained the origin and destination of the box containing the illegal drugs. These defendants were no strangers to the facts underlying the arrest warrant. In addition, they were alleged to have cooperated in the prosecution of Plaintiffs, by omitting from their official reports the true details of the incorrect address contained in the box's airway bill. (Dkt. 1 ¶¶ 15, 19). They allegedly had personal knowledge of the omissions and false information provided by defendant Ismael Rodríguez to the U.S. Magistrate. These allegations are enough to defeat the motion to dismiss. Accordingly, these defendants' motion to dismiss is **DENIED** on the above-stated grounds.

### False Statements and Omissions in the Search Warrant

■ Defendants argue that under a "totality of the circumstances" test, probable cause existed to issue the search warrant. They allege that both the correct and incorrect addresses were provided to the magistrate-judge in the application for the search warrant. They admit that Agent Ismael Rodríguez inadvertently misstated the address to which the package was sent in the affidavit. However, they argue that the misstatement was not essential for the finding of probable cause because: (1) the fact remains that the package was addressed to one Ramon Moreta; (2) the address on the package was approximately the same as Plaintiffs' address; and (3) the package was accepted for delivery at the address for which the search warrant was issued. They conclude that the omissions do not invalidate the search warrant and that the defendants were acting reasonably when they executed it.

■ The Court cannot agree with Defendants at this stage, because the Court is bound to accept Plaintiffs' allegations in the light most favorable to them. The determination of whether or not there was probable cause to issue the warrant is a subject best addressed through a summary judgment motion, because that finding necessarily requires a determination of what exactly was disclosed or undisclosed to the U.S. Magistrate–Judge. *See Maryland v. Garrison*, 480 U.S. 79, 85, 107

S.Ct. 1013, 94 L.Ed.2d 72 (1987) ("Just as the discovery of contraband cannot validate a warrant invalid when issued, so is it equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate.") Therefore, at this stage, dismissal on these grounds would be premature and inappropriate. Motion **DENIED.**

### III. Conclusion

After a review of Defendants' motions and their corresponding opposition, Defendants' motions to dismiss, (Dkts. ## 11, 17), are **GRANTED IN PART.** Judgment shall be entered dismissing Plaintiffs' claims under the Fifth and Fourteenth Amendment.

**SO ORDERED.**