Daniel J. DENNEHY, Plaintiff(s)

v.

Walter B. FRAMBES, et al., Defendant(s).

Civil No. 04–1899(JAG).

United States District Court, D. Puerto Rico.

Aug. 30, 2005.

Enrique A. Baez–Godinez, Law Office of Enrique A. Baez–Godinez, Miguel A. Cuadros–Pesquera, Cuadros & Cuadros, San Juan, PR, for Plaintiff.

Ruben Cerezo–Hernandez, Rosanna T. Cerezo, Benny F. Cerezo Law Office, San Juan, PR. for Defendants.

**OPINION AND ORDER**

GARCIA–GREGORY, District Judge.

On August 30, 2004, plaintiff Daniel J. Dennehy–Kelly ("Dennehy–Kelly") filed suit against Walter B. Frambes, Alines Frambes–Buxeda, Jessica Frambes–Buxeda, and Janine Frambes–Buxeda (collec-

tively "defendants") seeking a temporary restraining order, preliminary and permanent injunctive relief, as well as a declaration of his entitlement to a percentage of the proceeds an ongoing state court litigation may produce (Docket No. 1).[1] The Court's jurisdiction is premised upon diversity of citizenship pursuant to 28 U.S.C. § 1332. On December 27, 2004, defendants moved to dismiss Dennehy–Kelly's claims pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction and Fed.R.Civ.P. 12(b)(6) for failure to state a claim (Docket No. 24). On January 12, 2005, Dennehy filed an opposition (Docket No. 27). On March 9, 2005, the Court referred the motion to dismiss to Magistrate–Judge Justo Arenas for a Report and Recommendation (Docket No. 45). On May 12, 2005, Magistrate–Judge Arenas recommended that the Court deny defendants' motion (Docket No. 51). On May 26, 2005, defendants filed timely objections to the Report and Recommendation (Docket No. 56). For the reasons discussed below, the Court **ADOPTS** the Magistrate–Judge's Report and Recommendation and, accordingly, **DENIES** defendants' motion to dismiss.

### FACTUAL BACKGROUND[2]

On January 27, 2000, defendant Walter Frambes issued a letter addressed to Daniel J. Dennehy–Ward ("Dennehy–Ward")[3] stating that, as compensation for assuming the position of vice-president of Vencedor Development Corporation ("Vencedor") and supervising the litigation against the Puerto Rico Highway Authority ("PRHA") until its final resolution, Dennehy–Ward would receive nineteen and one sixth percent (19 1/6%) of the proceeds from the litigation. On May 19, 2000, Dennehy–Ward and Walter Frambes executed another document whereby Dennehy–Ward was ratified as vice-president of Vencedor "with full authority to act for the corporation with respect to the pending litigation in return for receipt with preference over other obligations of the corporation of nineteen and one half percent of the total amount recovered in the pending litigation." (Docket No. 20, Exh. 4).

On July 24, 2003, however, Walter Frambes issued a corporate resolution stripping Dennehy–Ward of his control over the PRHA litigation and of any and all powers conferred to him over the corporation. Walter Frambes made reference to some alleged irregularities and actions on the part of Dennehy–Ward which he claimed prejudiced Vencedor and the PRHA litigation. The resolution accused Dennehy–Ward, *inter alia,* of having made certain money transfers without informing Walter Frambes and of using Vencedor's bank account as his own personal account. Finally, the resolution effectively separated Dennehy–Ward from all the positions held and all the functions performed in relation to Vencedor.

In February 2004, Dennehy–Ward moved to Florida, as evidenced by his bank account statements. On July 1, 2004, Dennehy–Kelly and Dennehy–Ward executed a document titled "Assignment and Acceptance Agreement", whereby Dennehy–Ward assigned to his son "all of the right[s], title obligation and interest . . . in

---

**1.** The Court has already denied Dennehy–Kelly's request for a temporary restraining order and for a preliminary injunction (Docket Nos. 2, 61).

**2.** The Court culls the relevant facts from the Magistrate–Judge's Report and Recommendation.

**3.** Dennehy–Ward is Dennehy–Kelly's father. To avoid confusion, the Court will refer to the plaintiff as "Dennehy–Kelly" and to his father as "Dennehy–Ward".

any and all debt or obligation under contracts or agreements or by virtue of extra-contractual obligations owed to him and/or which [Dennehy–Ward] is the potential owner and/or ... has or may have a claim." (Docket No. 27, Exh. 1 at p. 2). The agreement also gave Dennehy–Kelly the right to bring any actions, administrative or judicial, in order to enforce the assigned rights and gave him the discretion to dispose of the same, or of the property acquired by virtue of the assigned rights. Dennehy–Ward died on October 13, 2004.

## DISCUSSION

### A. Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts have the duty of narrowly construing jurisdictional grants. See e.g., Alicea–Rivera v. SIMED, 12 F.Supp.2d 243, 245 (D.P.R.1998). Since federal courts have limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. See Murphy v. United States, 45 F.3d 520, 522 (1st Cir.1995); Droz–Serrano v. Caribbean Records Inc., 270 F.Supp.2d 217 (D.P.R. 2003).

When deciding whether to dismiss a complaint for lack of subject matter jurisdiction, the Court "may consider whatever evidence has been submitted, such as ... depositions and exhibits." See Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir.1996). When federal jurisdiction is premised on the diversity statute, courts must determine whether complete diversity exists among all plaintiffs and all defendants. Casas Office Machines v. Mita Copystar America, Inc., 42 F.3d 668, 673 (1st Cir.1994).

Motions brought under Rule 12(b)(1) are subject to the same standard of review for Rule 12(b)(6) motions. Negron–Gaztambide v. Hernandez–Torres, 35 F.3d 25, 27 (1st Cir.1994); Torres Maysonet v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R.2002). Under Rule 12(b)(6), dismissal is proper "only if it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." Gonzalez–Morales v. Hernandez–Arencibia, 221 F.3d 45, 48 (1st Cir.2000)(quoting Correa–Martinez v. Arrillaga–Belendez, 903 F.2d 49, 52 (1st Cir.1990)). Under Rule 12(b)(1) dismissal would be proper if the facts alleged reveal a jurisdictional defect not otherwise remediable.

### B. Standard for Reviewing a Magistrate–Judge's Report and Recommendation

A District Court may, on its own motion, refer a pending motion to a U.S. Magistrate–Judge for a Report and Recommendation. See 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Local Civ. Rule 72(a). Pursuant to Fed.R.Civ.P. 72(b) and Local Civ. Rule 72(d), the adversely affected party may contest the Magistrate–Judge's Report and Recommendation by filing written objections "[w]ithin ten days of being served" with a copy of the order. See 28 U.S.C. § 636(b)(1). Since defendants have filed timely objections to the Magistrate–Judge's Report and Recommendation, the Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which specific objection is made. See United States v. Raddatz, 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); Lopez v. Chater, 8 F.Supp.2d 152, 154 (D.P.R.1998).

### C. Defendants' Objections to the Report and Recommendation

In their motion to dismiss, defendants raise three main arguments for dismissal

of the complaint. First, they argue that there is no complete diversity between the parties because Dennehy–Ward, .the real party in interest according to defendants, was a resident of Puerto Rico at the time the complaint was filed. Second, as an alternative argument, defendants argue that plaintiff fails to meet the jurisdictional amount of seventy-five thousand dollars ($75,000) as required by 28 U.S.C. § 1332. Finally, defendants argue that even if diversity jurisdiction exists, the complaint should be dismissed because plaintiff's claims are unripe for adjudication at this time.[4] The Magistrate–Judge found that these arguments lack merit.

First, the Magistrate–Judge found that there is complete diversity because Dennehy–Kelly, who he found to be the real party in interest following the assignment, is, and was at the time of filing, a resident of the Commonwealth of Pennsylvania. Second, that, if the Court ultimately finds that plaintiff is entitled to a share of the proceeds from the PRHA litigation, his share would amount to approximately eight-hundred thousand dollars ($800,000); well beyond the statutory minimum. And third, that the controversy is indeed ripe for adjudication since plaintiff's entitlement to a share of the proceeds "is not contingent on the outcome of the litigation or on any facts not yet developed." (Docket No. 51 at 18). Defendants timely objected.

### 1. Diversity Of Citizenship

■ Defendants argue that no diversity exists because at the time the complaint was filed Dennehy–Ward was a resident of Puerto Rico. Their only evidence to that effect is a service by publication notice published in a local newspaper after the filing of the complaint, which states Den-nehy–Ward's last known address as located in Guaynabo, Puerto Rico. Not only is it insufficient to establish Dennehy–Ward's domicile for diversity purposes, but it actually·lends credence to plaintiff's contention. If a plaintiff seeking to sue Dennehy–Ward was forced to perform service by publication, it is most likely because he could ̇not serve Dennehy–Ward personally at that address in Guaynabo, Puerto Rico. Furthermore, the Magistrate–Judge did find that, as evidenced by his bank account statements, Dennehy–Ward had moved his residence to Florida before the complaint was filed.

Defendants further argue that Dennehy–Ward's assignment to Dennehy–Kelly is invalid because Dennehy–Ward could only legally transfer his cause of action for damages and not a personal right to have control over the PRHA litigation, and because the assignment was done collusively with the purpose of creating federal jurisdiction in contravention of 28 U.S.C. § 1359. The argument relating to the impropriety of the assignment, although it might have some merit, is not properly before the Court because it was not argued in the motion to dismiss and the Court refuses to entertain on an objection any arguments not properly raised before the Magistrate–Judge. *See Fonseca–Arroyo v. Puerto Rico Elec. Power Authority*, 367 F.Supp.2d 198, 200 (D.P.R. 2005)("The Court has discretion in deciding whether or not to entertain arguments not properly raised before the magistrate-judge").

Moreover, the § 1359 argument is also easily dismissed. Because the Magistrate–Judge found that Dennehy–Ward was a resident of Florida at the time of filing and he was, thus, independently di-

---

4. Defendants' remaining arguments are properly directed towards plaintiff's request for preliminary injunctive relief, which the Court has already denied upon the Magistrate–Judge's recommendation (*See* Docket No. 61).

verse from the defendants, the Court is hard-pressed to find that the assignment was collusive and with the purpose of creating diversity jurisdiction. Diversity of citizenship already existed when Dennehy–Ward made the assignment.

### 2. *Amount In Controversy*

 Defendants argue that because the state court has not yet issued any judgment in the PRHA litigation, which in fact has not even gone to trial, and because they have not reneged on his claims over a share of the proceeds, plaintiff's claims are purely speculative and unpredictable. Thus, they argue, plaintiff cannot establish that the amount he may recover as a result of this case will surpass the seventy-five thousand dollar jurisdictional minimum. The Magistrate–Judge found, however, that

> [a]ssuming without deciding that Dennehy[-KElly]'s claim is actionable and that he is entitled to the relief requested because the grounds asserted by him are legally and procedurally sound, it follows that he has carried his burden of showing that it is not a legal certainty that his claim is for less than the jurisdictional amount.

(Docket No. 51 at 14). This conclusion is founded upon an expert report which values the possible proceeds from the PRHA litigation at over four-million dollars, making plaintiff's purported share a little over eight-hundred thousand dollars. The Court, upon *de novo* review, finds no reason to depart from the Magistrate–Judge's finding.

### 3. *Ripeness*

 Defendants argue that this case is not ripe for adjudication because the alleged injury to the plaintiff is contingent upon future events which may or may not happen; mainly, that Vencedor will prevail in the PRHA litigation as well as all appeals, that it will receive a money award, and that defendants will refuse to give the plaintiff his share of the proceeds. Thus, there is currently no case or controversy before the Court, as required by U.S. Const. Art. III § 2. Furthermore, they argue that the threat of future injury is neither immediate nor imminent.

The Court finds, however, that a controversy does presently exist in this matter. As the Magistrate–Judge correctly stated, Dennehy–Kelly's entitlement to a share of the proceeds presents "a purely legal question that may or may not be resolved in [his] favor . . . ." (Docket No. 51 at 18). Whether Dennehy–Kelly has a right to a participation in the litigation, whatever its outcome may be, is a question that can be considered by the Court since his entitlement does not depend on the outcome. What will be affected by the outcome is simply the specific amount that plaintiff could be entitled to. Therefore, there is a controversy which is ripe for judicial adjudication.

### CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate–Judge's Report and Recommendation in its entirety. Accordingly, the Court **DENIES** defendants' motion to dismiss.

IT IS SO ORDERED.