Wilfredo MARTINEZ–RODRIGUEZ,
Plaintiff,

v.

Rogelio E. GUEVARA,
et al., Defendants.

Civil No. 03–1794 (FAB).

United States District Court,
D. Puerto Rico.

Nov. 29, 2007.

Luis R. Rivera–Rodriguez, Luis Rafael Rivera Law Office, San Juan, PR, for Plaintiff.

Ginette L. Milanes, Rebecca Vargas–Vera, United States Attorney's Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On July 22, 2003, Wilfredo Martinez–Rodriguez filed a complaint against defendants Rogelio E. Guevara, Jerome Harris, Enrique Nieves, Aramis Quiñones, Nelson

Gonzalez, Francisco J. Alvarez, and John F. Kanig[1] for a violation of his rights under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution. (Docket No. 1, page 6, ¶ 21). The complaint arises out of the prosecution of Martinez–Rodriguez, a Puerto Rico police officer charged with conspiracy to distribute narcotics but later acquitted following a jury trial.

Specifically, the complaint alleges that defendant Aramis Quiñones (a special agent investigator of the Drug Enforcement Administration "DEA") falsely testified before the grand jury that plaintiff had acted as a body guard for Alexis Lopez–Lopez, another police officer who was charged and convicted on drug charges. Plaintiff further alleges he was falsely implicated in the case solely because he accompanied Lopez–Lopez to a restaurant while the latter participated in a "lengthy drug related conversation" with defendant Gonzalez, an undercover DEA agent. *Id.*, ¶¶ 7–8 and 18–22. Plaintiff argues that the remaining defendants, DEA officials or agents Guevara, Harris, Nieves, Gonzalez, Alvarez and Kanig, had knowledge or constructive knowledge of Quiñones' false testimony. Therefore, they failed to inform the prosecuting attorney and grand jurors of the "true facts surrounding the presence of plaintiff during the drug related conversations". *Id.*, ¶ 23. Plaintiff avers the alleged conduct is redressable under *Bivens v. Six Unknown Agent of the Federal Narcotics Bureau*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[2]

On August 22, 2007, the Court entered judgment dismissing plaintiff's claims under the Fifth and Fourteenth Amendments with prejudice. (Docket No. 46) Defendants' request to dismiss Plaintiff's Fourth Amendment claim on qualified immunity grounds, however, was denied because the "record [was] not ripe for a determination". (Docket No. 44, p. 21) Specifically, the Court found that the pleadings alone did not provide sufficient information to clarify: "(1) the extent and nature of the relationship between Plaintiff and Lopez–Lopez; (2) whether plaintiff was at any moment located in a position where he could, as a matter of fact, hear the 'lengthy drug related' conversation; (3) whether Plaintiff's actions inside the bar were suspicious or not; and (4) what happened after the conversation ended." *Id.*

On September 28, 2007, defendants were granted until October 29, 2007, to file a motion for summary judgment requesting the dismissal of plaintiff's Fourth Amendment claims. (Docket No. 67)

On October 29, 2007, defendants filed a Motion for Summary Judgment requesting the dismissal of plaintiff's claims on qualified immunity grounds. (Docket Nos. 74–76) Specifically, they claim that additional evidence in this case answers all the questions posed by the Court when it denied their original request to dismiss plaintiff's claims and reveals that defendants had every reason to believe that Plaintiff was part of the illegal conspiracy. (Docket No. 75, p. 5) On November 2, 2007, plaintiff opposed defendant's request. (Docket Nos. 77–78) Defendants filed a reply. (Docket No. 88)

For the reasons discussed below, the Court **GRANTS** Defendants' motion for

---

1. Both in their personal and official capacities. (Docket No. 1)

2. The plaintiff is also asking that the Court declare illegal and unconstitutional the alleged practice of "providing false testimony to a grand jury and thereafter concealing said [sic] actions from the criminal justice system" and issue a permanent injunction enjoining defendants from engaging in this practice in the future. Docket No. 1, page 13.

summary judgment and **DISMISSES** this case **WITH PREJUDICE.**

## I. *THE FACTS* [3]

In December 2000, DEA Special Agents Kanig and Quiñones debriefed a confidential source concerning alleged drug trafficking activities involving several police officers assigned to the Caguas Tactical Operation Unit of the Puerto Rico Police Department. As a result of the information provided by the confidential source, defendants became aware that police officer Roberto Martinez–Hernandez ("Hernandez"[4]) was engaged in the drug trafficking activities that were being investigated and that he was allegedly dealing with large quantities of drugs and weapons. (Defendants' Statement of Facts in Support of Motion for Summary Judgment "SUMF", ¶ 1 and Docket No. 1, ¶¶ 13–14)

From January 2001 through March 2001, two separate purchases of heroin from Hernandez were made at the direction of DEA agents in the course of the investigation. (SUMF, ¶ 2)

On March 9, 2001, the confidential source met with Hernandez and introduced him to defendant Gonzalez, who was posing undercover as a drug trafficker from Texas interested in purchasing heroin from Hernandez. During 2001, Hernandez identified Lopez–Lopez as the source of supply for heroin. (SUMF, ¶ 2)

Prior to February 28, 2001, plaintiff's telephone number had already appeared on the telephone records of individuals targeted by this DEA investigation. (SUMF, ¶ 3, Exhs. 1 and 2)

Between February 27, 2001 and March 26, 2001, Lopez–Lopez telephoned Plaintiff thirteen times, but none of the conversations lasted more than two minutes. (SUMF, ¶ 4, Exh. 2)

On March 25, 2001, the DEA conducted a telephone toll/subscriber analysis of cellular telephone number 787–562–4163. The target telephone was subscribed to Jose R. Martinez–Hernandez. The analysis also showed three prior telephone contacts between Hernandez and the Plaintiff. (SUMF, ¶ 5[5], Exh. 3, p. 2)

Between April 1, 2001 and April 24, 2001[6] Lopez–Lopez called Plaintiff thirteen times and Plaintiff called Lopez–Lopez five times. One of these conversations lasted five minutes, the rest of the calls lasted no more than two minutes. (SUMF ¶ 6[7], Exh. 4, pages 4–6, 9, 11 and 13–18)

On May 14, 2001, Lopez–Lopez called the undercover agent (Gonzalez) and agreed to meet him and Hernandez at the Oyster Bar Restaurant in Isla Verde, Puerto Rico to discuss details of future purchases of heroin. When the undercover agent arrived at and entered the restaurant, he noticed Lopez–Lopez was already there with another police officer, later

---

**3.** Additional background for this case is outlined in the May 31, 2007 Report and Recommendation (Docket No. 44) adopted by the undersigned on August 20, 2007 (Docket No. 45). The following factual narrative, however, pertains particularly to the pending summary judgment motion and is derived from the parties' filings.

**4.** To avoid confusion with plaintiff's last name, the Court will refer to him as "Hernandez".

**5.** Erroneously numbered paragraph 4.

**6.** As part of their SUMF, defendants expressed these conversations occurred in 2007. Having reviewed the exhibits submitted, the Court understands this is a typographical error.

**7.** Erroneously numbered paragraph 5.

identified as the Plaintiff. (SUMF, ¶ 7 [8], Exhs. 5 [9] and 6 [10])

While the three men (plaintiff, Lopez–Lopez and Gonzalez) waited for Hernandez to arrive, they moved to some of the tables at the restaurant further away from the bar. When Hernandez arrived and greetings were exchanged, he and Lopez–Lopez went to the bar area. While they were at the bar area, undercover Agent Gonzalez asked Plaintiff his name. Gonzalez heard that plaintiff answered "Wilson" (SUMF, ¶ 8 [11]; Docket No. 86, Exh. 1, p. 35 and 44)

After a short period, Hernandez and Lopez–Lopez returned to the table where the undercover agent (Gonzalez) was seated. Hernandez introduced Lopez–Lopez to the undercover agent and instructed them to discuss the drug deal. During the approximately following two and a half hours, Hernandez and the undercover agent (Gonzalez) conducted an extensive discussion into possible future drug transactions, including buying unadulterated heroin in large quantities for distribution in the United States. They discussed the specific details of the planned transaction such as: the quality of the heroin and its country of origin, when the drugs would be available for purchase, the purchase price and the payment method, and the delivery method and location. During the meeting Lopez–Lopez also offered to sell cocaine to the undercover agent. The meeting then ended and all four men left the restaurant at the same time. (SUMF, ¶ 9 [12], Exhs. 5 and 6)

Gonzalez, Lopez–Lopez and Hernandez were seated at the same table. Plaintiff was seated at a separate "smaller" table located "about an arm and a half" (between three and four feet) from Gonzalez. (Docket No. 86, p. 40–41)

At least part of the time, Plaintiff spoke with the other three men and could hear the conversation. (Docket No. 86, Exh. 2, p. 46, lines 9–12; Docket No. 86, Exh. 1, p. 42)

During the meeting, they also talked about other general matters like the Felix ("Tito") Trinidad boxing fight, girlfriends (conversation between Hernandez and Martinez), etc. (Docket No. 76, Exh. 5; Docket No. 86, p. 42, 43, 49, 57)

## II. SUMMARY JUDGMENT STANDARD

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *See also, Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52. (1st Cir.2000); *Morales, et al. v. St. Luke's Episcopal Hospital, et al.,* 328 F.Supp.2d 192, 195–196 (D.P.R.2004). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

**8.** Erroneously numbered paragraph 3.

**9.** Report of investigation re: Undercover meeting between S/A Nelson Gonzalez, Alex Lopez–Lopez, Jose Roberto Martinez–Hernandez and Wilson LNU on 05–14–2001.

**10.** Report of Investigation re: A/positive investigation Wilfredo Martinez–Rodriguez.

**11.** Erroneously numbered paragraph 4.

**12.** Erroneously numbered paragraph 5.

Once a properly supported motion for summary judgment has been presented, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine". "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion." *Maldonado–Denis v. Castillo–Rodriguez*, 23 F.3d 576, 581 (1st Cir.1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir.1990). "Mere allegations, or conjecture unsupported in the record, are insufficient to raise a genuine issue of material fact". *August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir.1992). Therefore, the court may safely ignore, however, "conclusory allegations, improbable inferences, and unsupported specula-

tion." *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990).

### III. *QUALIFIED IMMUNITY*

■ The qualified immunity doctrine protects government officers and employees from suit on federal claims for damages where, in the circumstances, a reasonable official could have believed his conduct was lawful. *Olmeda v. Ortiz–Quiñones*, 434 F.3d 62 (1st Cir.2006); *Rodriguez–Rodriguez v. Ortiz–Velez*, 391 F.3d 36, 41 (1st Cir.2004).

■ A three-step process exists for evaluating qualified immunity claims: 1) whether the claimant has alleged the deprivation of an actual constitutional right; 2) whether the right was clearly established at the time of the alleged action or inaction; and, 3) if both these questions are answered in the affirmative, whether an objectively reasonable official would have believed that the action taken violated that clearly established constitutional right. *See, Vazquez–Valentin v. Santiago–Diaz*, 459 F.3d 144, 154, n. 6 (1st Cir.2006)(citing *Wilson v. City of Boston*, 421 F.3d 45, 52–53 (1st Cir.2005)).

In this case, the answer to the first two inquiries is in the affirmative. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court recognized that the use of false statements to obtain a warrant violates the Fourth Amendment. Since then, the right of an individual to have a warrant issued only upon probable cause is a clearly established constitutional right. *See also Moreta–Ramirez v. Lemert*, 233 F.Supp 2d 286, 290 (D.P.R.2002) ("*Moreta II*") This also applies to false statements used to support an indictment. *Moreta–Ramirez v. Lemert*, 156 F.Supp.2d 138, 141 (D.P.R.2001) ("*Moreta I*").

Regarding the third prong, however, defendants must establish that they could not

have reasonably believed their conduct was lawful in light of clearly established Fourth Amendment law. The Supreme Court has held that the protection of qualified immunity will be lost **only** "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *Moreta II*, 233 F.Supp.2d at 290; *see also, Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Forman v. Richmond*, 104 F.3d 950, 964 (7th Cir. 1997). The crucial issue "is whether a reasonably well-trained officer in the defendant's position would have known that the affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345, 106 S.Ct. 1092. "[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized." *Id.* at 341, 106 S.Ct. 1092; *Moreta II*, 233 F.Supp.2d at 290; *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir.1997) (stating that there must not even "arguably" be probable cause for the search for immunity to be lost).

■ "[W]here a reasonable law enforcement officer, confronted with the same circumstances, could have believed that the defendant's actions, **even if mistaken, were reasonable,** the law is not so clearly established as to strip the defendant of his or her qualified immunity". *See Moreta II*, 233 F.Supp.2d at 290 (*citing, Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523(1987)) (emphasis added); *see also Hunter v. Bryant*, 502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (stating that even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity).

Furthermore, before losing the shield of qualified immunity, the plaintiff must show that the officer deliberately submitted false testimony or acted in reckless disregard for the truth. To meet his burden, plaintiff must show that the officer "in fact entertained serious doubts as to the truth of [the] allegations". *Moreta II*, 233 F.Supp.2d at 291. (*citing, Franks*, 438 U.S. at 171, 98 S.Ct. 2674 and *United States v. Williams*, 737 F.2d 594, 602 (7th Cir.1984))

■ Allegations of "negligence or innocent mistake" resulting in the submission of false information by a law enforcement officer are insufficient to deny defendant's qualified immunity. *Franks*, 438 U.S. at 171, 98 S.Ct. 2674.

Defendants argue they are entitled to qualified immunity because their actions were more than reasonable in light of the facts. Specifically, they claim that according to their experience and training as DEA officers, Agent Quiñones' conclusion and testimony that Plaintiff was acting as Lopez–Lopez's bodyguard was reasonable and supported by the evidence. Furthermore, they claim that even if Agent Quiñones was mistaken about Plaintiff's role, that alone is insufficient to state a constitutional claim or to preclude the dismissal of plaintiff's claims on qualified immunity grounds. (Docket No. 75, p. 3)

■ It is clear that Quiñones' conclusion and testimony that Plaintiff was acting as Lopez–Lopez's bodyguard was reasonable. The Court finds that a reasonable officer in the same circumstances, would have also believed that Plaintiff was involved in the drug trafficking scheme.

Before losing the shield of qualified immunity, the plaintiff must show that the officer deliberately submitted false testimony or acted in reckless disregard for the truth. To meet his burden, plaintiff must show that the officer "in fact entertained serious doubts as to the truth of [the] allegations". *Moreta II*, 233 F.Supp.2d at 291. Plaintiff has not made

this showing. In his opposition, he only argues that he did not participate in a drug related conversation and that he was not in the meeting during the whole time because, during the alleged conversations, "he was talking on his cellular phone with friends and relatives." *Id.* In addition, he alleges that defendants failed "to reveal that [he] did not participate in any drug related conversations during the entire investigation and concealed the fact that plaintiff was merely present during the drug related conversations between Alex Lopez and Nelson Martinez".[13] (Docket No. 77, p. 4) The trial transcript of Agent Gonzalez's testimony, however, directly contradicts plaintiff's allegations. *See* Docket No. 86, Exh. 1, p. 50, 51. Moreover, Plaintiff's allegation that he was "conducting phone conversations with relatives and friends at the time when the drug related conversation was taking place" is unsupported by the record. That is, Plaintiff did not cite, include or attach any evidence to support those allegations. In addition, plaintiff makes various allegations about Quiñones' testimony during the Grand Jury Proceedings. Plaintiff, however, did not attach any transcript or evidence to support his allegations. *August,* 981 F.2d at 580 (Mere allegations or conjecture, unsupported in the record, are insufficient to raise a genuine issue of material fact.)

In fact, as correctly asserted by defendants, there are more than sufficient undisputed facts in this case to support defendants' belief that Plaintiff was part of

the drug trafficking conspiracy was reasonable, and thus, their testimony to that effect was not given with reckless disregard for the truth. For instance, Plaintiff's opposition did not dispute the fact that the subpoenaed telephone records show that he had frequent telephone contact with Lopez and Hernandez dating at least as far back as February 28, 2001. (Docket No. 76, Exhs. 1 and 2) It is also undisputed that plaintiff accompanied Lopez–Lopez to the Oyster Bar & Grill and that Lopez–Lopez and Hernandez engaged in a lengthy drug related conversation in his presence. (Docket No. 77, pp. 3 and 4) Whether or not Plaintiff was ultimately seated at the same table as Lopez–Lopez, Hernandez, and Gonzalez (a fact that plaintiff alleges also precludes summary judgment), he admits that: a) even though he allegedly went to Oyster Bar with Lopez–Lopez to eat and drink beers, when they were done eating and Gonzalez and Hernandez arrived, he moved with all three men to a table further away from the bar (Docket No. 86, Exh. 2, p. 35); b) he bought all of the men at least one round of drinks (*Id.,* p. 46 and 47); c) at least part of the time Plaintiff spoke with the other three men and could hear the conversation (*Id.,* p. 46; Docket No. 86, Exh. 1, p. 42, 43, 49, 57; and, Docket No. 76, Exh. 5); and d) he left the restaurant with Lopez–Lopez and the two other men.[14]

All of these facts could lead a reasonable law enforcement officer to believe that the

13. The Court understands that plaintiff refers to Nelson Gonzalez (the undercover agent) because no defendant by that name is being sued in this case.

14. Plaintiff also alleges in his opposition that defendants' motion for summary judgment should also be denied because "[r]eviewing the evidence in a light most favorable to [him], reasonable minds can come to different conclusions as to whether defendants actions were objectively reasonable under the circum-

stances". (Docket No. 77). Plaintiff seems to ignore, however, that when reasonable minds can come to different conclusions as to whether defendants actions were objectively reasonable, immunity **should** be recognized. *See Moreta II,* 233 F.Supp.2d at 290 (*citing Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) and *Hart v. O'Brien,* 127 F.3d 424, 444 (5th Cir.1997))(emphasis added).

plaintiff was part of the conspiracy. *See Lowinger v. Broderick,* 50 F.3d 61, 65 (1st Cir.1995) (*citing Cookish v. Powell,* 945 F.2d 441, 443 (1st Cir.1991)) (A "reasonable, although mistaken, conclusion about the lawfulness of one's conduct does not subject a government official to personal liability.") *See also Malley,* 475 U.S. at 341, 106 S.Ct. 1092; *Rivera Rodriguez v. Beninato,* 469 F.3d 1, 4 (1st Cir.2006); *Rivera v. Murphy,* 979 F.2d 259, 263 (1st Cir.1992) (the "qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' ") Therefore, they are entitled to qualified immunity.

Consequently, defendants' motion for summary judgment is **GRANTED.** Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.** Judgment shall enter accordingly.

Plaintiff's Motion or Writ of Habeas Corpus ad testificandum (Docket No. 85) is also **DENIED.** The Jury Trial scheduled to begin on December 10, 2007 is **VACATED.**

**IT IS SO ORDERED.**