# United States Court of Appeals
## For the First Circuit

No. 08-1086

WILFREDO MARTÍNEZ-RODRÍGUEZ,

Plaintiff, Appellant,

v.

ROGELIO E. GUEVARA, Chief of Operations, Drug Enforcement
Administration; JEROME HARRIS, Special Agent in Charge,
Caribbean Field Division; ENRIQUE NIEVES, Group Supervisor;
ARAMIS QUIÑONES, Special Agent; NELSON GONZÁLEZ, Special Agent;
FRANCISCO J. ÁLVAREZ, Special Agent; JOHN F. KANIG,
Special Agent,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
[Hon. Francisco A. Besosa, U.S. District Judge]

Before
Torruella, Lipez, and Howard,
Circuit Judges.

Luis Rafael Rivera,* for appellant.
Ginette L. Milanés, Assistant United States Attorney, with
whom Rosa E. Rodríguez-Vélez, United States Attorney, Nelson Pérez-

---

* Attorney Rafael Rivera failed to appear at oral argument without
previously apprising the court of his inability to appear. In the
absence of appellant's counsel, the court heard arguments from
appellees' counsel pursuant to Fed. R. App. P. 34(e). In response
to an order of the court, Rivera explained that he was unable to
appear at oral argument due to a calendar conflict. We express our
discontent with Rivera's failure to appear before the court for
oral argument. An attorney "who fails to appear for oral argument
and is not excused therefrom is violating an important duty to the
client and an important obligation to the court." Dickens v. State
of Mo., 887 F.2d 895, 896, n.2 (8th Cir. 1989).

Sosa, Assistant United States Attorney, Chief, Appellate Division, and Germán A. Rieckehoff, Assistant United States Attorney, were on brief for appellees.

------------------------

March 1, 2010

------------------------

**TORRUELLA**, <u>Circuit Judge</u>.  Plaintiff-Appellant Wilfredo Martínez-Rodríguez appeals the district court's entry of summary judgment dismissing, on qualified immunity grounds, his claim that several Drug Enforcement Administration ("DEA") agents violated his Fourth Amendment right to be free from arrest and prosecution without probable cause.  Martínez-Rodríguez claims that several DEA agents provided false and misleading statements to the grand jury and throughout his criminal prosecution with knowledge of their falsity or in reckless disregard for the truth in order to manufacture probable cause against him.  After a careful review of the record, we find that Martínez-Rodríguez has not made a showing that defendants intentionally or recklessly provided false or misleading statements to support his indictment and arrest on drug-related charges.  We therefore affirm the district court's judgment.

## I. <u>Background</u>[1]

### A. Underlying Drug Trafficking Investigation

The facts that underlie this appeal arise from a DEA investigation into alleged drug trafficking activities conducted by several police officers assigned to the Caguas Tactical Operations

---

[1]  The facts are drawn from the parties' statements of material uncontested facts and the exhibits submitted by the parties at the summary judgment stage.  Because this is an appeal from a grant of summary judgment, we recite the facts in the light most favorable to plaintiff-appellant, Martínez-Rodríguez.  <u>Burke</u> v. <u>Town of Walpole</u>, 405 F.3d 66, 71 (1st Cir. 2005).

Unit of the Puerto Rico Police Department ("PRPD"). On the basis of information provided by a confidential source around December 2000, DEA agents John F. Kanig and Aramis Quiñones ("Quiñones") learned that PRPD officer Roberto Martínez-Hernández ("Hernández") was dealing large quantities of drugs. The investigation also revealed that another police officer, Alexis López-López ("López-López"), was supplying heroin to Hernández.

From January to March 2001 and at the behest of the DEA agents, the confidential source conducted two separate heroin purchases from Hernández. The DEA agents also established direct contact with Hernández through an undercover agent, Nelson González ("González"), who posed as a drug trafficker from Texas. González and Hernández also discussed future purchases of heroin.

Although the DEA investigation centered on Hernández's and López-López's drug trafficking activities, its efforts also yielded information that Martínez-Rodríguez, another PRPD officer, had been in contact with both López-López and Hernández. For example, two subpoenas of López-López's cell phone records revealed that López-López and Martínez-Rodríguez had at least twelve telephone communications between February 27, 2001 and March 26, 2001, and that between April 1, 2001 and April 24, 2001, López-López called Martínez-Rodríguez thirteen times, while Martínez-Rodríguez called López-López five times. Finally, a telephone toll/subscriber analysis of a telephone subscribed to

-4-

José R. Martínez-Hernández revealed three prior telephone communications between Hernández and Martínez-Rodríguez.

**B. The May 14th Meeting**

The crucial events for the purposes of the present appeal transpired on May 14, 2001, when López-López and Hernández met with undercover agent González at the Oyster Bar Restaurant in Isla Verde, Puerto Rico. Martínez-Rodríguez accompanied López-López to the Oyster Bar that day. Hernández served as an intermediary between López-López and undercover agent González as he introduced López-López to González and instructed them to discuss potential drug deals. After this introduction, Hernández, López-López, and González discussed future drug transactions which included the possibility of buying heroin to distribute in the United States. The three men discussed how the heroin would be delivered and distributed, its purchase price, and payment methods.

During the meeting, Hernández, López-López, and González were seated at the same table. But at least throughout part of the drug-related meeting, Martínez-Rodríguez was seated at a nearby table. When the meeting ended after approximately two and a half hours, the four men left the restaurant at the same time.

**C. Martínez-Rodríguez's Indictment and Filing of His Civil Rights Suit**

In the course of a grand jury investigation special agent Quiñones testified as to the details of the drug trafficking operation and stated that Martínez-Rodríguez acted as López-López's

bodyguard during the May 14th meeting.  Martínez-Rodríguez was subsequently indicted and arrested on drug trafficking charges.  On August 2, 2002, Martínez-Rodríguez was acquitted following a jury trial.  He subsequently filed a civil rights action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), against several DEA officials and agents. Martínez-Rodríguez named two group of defendants in his complaint. In the first group of defendants he included DEA officials Rogelio E. Guevara, Chief of Operations of the DEA; Jerome Harris, Special Agent in Charge of the Caribbean Field Division of the DEA; and Enrique Nieves, Group Supervisor and Acting Investigator of the DEA.  The second group of defendants included the DEA agents who participated in the drug trafficking investigation, namely, DEA special agents Aramis Quiñones, Nelson González, Francisco J. Álvarez, and John F. Kanig (collectively, "Defendants").

In his complaint, Martínez-Rodríguez claimed that DEA special agent Quiñones knowingly gave false or misleading testimony before the grand jury in order to establish probable cause for his indictment and arrest.  According to Martínez-Rodríguez, the other DEA officials and agents listed as defendants had constructive knowledge of Quiñones's false testimony to the grand jury, and they failed to reveal that Martínez-Rodríguez did not participate in the drug-related conversation at the Oyster Bar, resulting in his

illegal arrest, without probable cause, in violation of his Fourth, Fifth and Fourteenth Amendment rights.

Following a few procedural incidents concerning service of process and personal jurisdiction, Defendants filed a Motion to Dismiss arguing, inter alia, that the complaint failed to state a claim under Bivens for which relief could be granted and that in the alternative they were entitled to qualified immunity. Adopting a Report and Recommendation issued by a magistrate judge, the district court dismissed Martínez-Rodríguez's Fifth and Fourteenth Amendment claims. Defendants subsequently filed a Motion for Summary Judgment requesting dismissal of Martínez-Rodríguez's Fourth Amendment claim on qualified immunity grounds. The district court granted Defendant's motion and dismissed the case, holding that Defendants' actions were objectively reasonable under clearly established law. Martínez-Rodríguez timely appeals the district court's dismissal of his Fourth Amendment claim.

## II. Discussion

As a threshold matter we clarify the scope of the arguments raised by the parties in this appeal. Throughout the different stages of this litigation and in their briefs, the parties have rested on two basic assumptions. First, they assume that Defendants are protected by qualified immunity rather than absolute immunity. Second, they assume that the constitutional claim at issue should be treated as a Fourth Amendment violation

akin to that discussed in Franks v. Delaware, 438 U.S. 154 (1978). We adopt the parties' assumptions for purposes of this appeal but do not decide whether they are warranted.

**A. Summary Judgment**

Our review of the district court's entry of summary judgment on qualified immunity grounds is de novo. Bergeron v. Cabral, 560 F.3d 1, 7 (1st Cir. 2009).

Summary judgment should be granted if the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue exists where the evidence is sufficient for a reasonable trier of fact to return a verdict in favor of the nonmoving party. Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009). Similarly, "[a] fact is material if it has the potential of determining the outcome of the litigation." Maymí v. P.R. Ports Auth., 515 F.3d 20, 25 (1st Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In order to overcome a motion for summary judgment, the non-moving party must put forth specific facts to support the conclusion that a triable issue subsists. Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). With respect to each

issue on which the nonmoving party has the burden of proof at trial, that party must "present definite, competent evidence to rebut the motion." Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)(quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). However, "summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." Ingram v. Brink's, Inc., 414 F.3d 222, 229 (1st Cir. 2005).

**B. Qualified Immunity**

Qualified immunity seeks to accommodate the public interest in deterring unlawful conduct with the need to provide a forum for individuals to pursue redress for constitutional wrongs suffered in the hands of public officials. See Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982). The qualified immunity doctrine protects federal and state officials from civil liability in the performance of "discretionary functions . . . insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818.

The qualified immunity test is identical for claims pursued under § 1983 and for Bivens-type suits. Wilson v. Layne, 526 U.S. 603, 609 (1999). Because the parties briefed the qualified immunity issue under the three-part test employed by this court prior to the Supreme Court's decision in Pearson v. Callahan,

129 S. Ct. 808 (2009), we will review the district court's grant of qualified immunity in this case under the pre-Pearson tripartite test.[2] Under this three-pronged mode of analysis, we must determine "(i) whether the plaintiff's proffered version of the facts, if true, makes out a violation of a constitutionally protected right; (ii) . . . whether that right was clearly established at the time of the putative violation; and (iii) . . . whether a reasonable public official, situated similarly to the defendant, should have understood the challenged act or omission to violate the discerned right." Bergeron, 560 F.3d at 7 (quoting Morelli v. Webster, 552 F.3d 12, 18 (1st Cir. 2009).

After Pearson, we are not required to take these inquiries in strict sequence. Id. But because the district court in this case chose to address these steps in sequence, and the parties briefed the issue on that basis, we choose to employ the same sequential analysis.

---

[2] Pursuant to the Supreme Court's decision in Pearson, we now collapse the three-step qualified immunity analysis into a two-part test which requires courts to determine: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Maldonado v. Fontánes, 568 F.3d 263, 269 (1st Cir. 2009). We would reach the same result in the present case if we were to review the district court's grant of qualified immunity under the newly-adopted two-part test. See Bergeron, 560 F.3d at 7 n.2 (explaining that "[t]he three-step approach is functionally equivalent to the two-step approach" and holding that the resolution of the case would be the same "regardless of [the] methodology . . . employed").

Martínez-Rodríguez grounds his Fourth Amendment claim on an allegation that Defendants procured his arrest and indictment on the basis of false testimony and material misrepresentations given intentionally or with reckless disregard for the truth. Martínez-Rodríguez claims that Quiñones falsely testified before the grand jury that Martínez-Rodríguez acted as López-López's bodyguard during the May 14th meeting and that he participated in the drug-related conversation. Martínez-Rodríguez also claims that the other Defendants had constructive knowledge of Quiñones's false testimony but intentionally or recklessly failed to reveal to the grand jury or the court that Martínez-Rodríguez had not participated in the drug conspiracy.

It is clearly established law that the Fourth Amendment requires that arrests be based upon probable cause. See Beck v. Ohio, 379 U.S. 89, 91 (1964); Abreu-Guzmán v. Ford, 241 F.3d 69, 73 (1st Cir. 2001). It is also beyond peradventure that arrests procured on the basis of material false statements or testimony given in reckless disregard for the truth violate the Fourth Amendment. See Burke, 405 F.3d at 81 (stating that officers violate the Fourth Amendment if they "act[] in reckless disregard, with a high degree of awareness of [the] probable falsity of statements made in support of an arrest warrant" (internal quotation marks omitted)); Aponte-Matos v. Toledo-Dávila, 135 F.3d 182, 187 (1st Cir. 1998) ("An officer who obtains a warrant through

-11-

material false statements which result in an unconstitutional search may be held personally liable for his actions under § 1983."); see also Franks, 438 U.S. at 155-56 (holding that the use of false statements to obtain a warrant violates the Fourth Amendment provided that the false statements were material to the finding of probable cause). There is also no question that these constitutional protections extend to the grand jury context. Thus, there is a clearly established Fourth Amendment right not to be indicted and arrested on the basis of false or misleading statements given before a grand jury. Cf. Limone v. Condon, 372 F.3d 39, 45 (1st Cir. 2004) ("[T]hose charged with upholding the law are prohibited from deliberately fabricating evidence and framing individuals for crimes they did not commit.").

In a diffuse fashion, Martínez-Rodríguez contends there are genuine issues of material facts regarding the veracity of Quiñones's testimony and conclusion that Martínez-Rodríguez acted as López-López's bodyguard and was able to hear the drug-related conversation. He also claims there is a factual dispute regarding the reasonableness of Defendants' belief that he was part of the drug-trafficking conspiracy. In support of this claimed factual dispute Martínez-Rodríguez relies on the transcript of Quiñones's grand jury testimony. However, a review of the record reveals that Martínez-Rodríguez never attached Quiñones's grand jury transcript

to his opposition to Defendant's motion for summary judgment.[3] Given that Martínez-Rodríguez's contention is based on evidence not supported on the record, we conclude that Martínez-Rodríguez has failed to shoulder the burden of proving that a material factual dispute exists that would preclude the court from addressing Defendants' qualified immunity claim. Nieves v. Univ. of P.R., 7 F.3d 270, 280 (1st Cir. 1993)("Factual assertions by counsel in motion papers, memoranda, or briefs are generally not sufficient to generate a trialworthy issue.").

Moreover, the undisputed facts establish that: (1) Martínez-Rodríguez attended the May 14th meeting with López-López, an individual who was under investigation for drug trafficking; (2) the purpose of the meeting was to discuss future drug transactions; (3) prior to the May 14th meeting, Martínez-Rodríguez had established telephone contacts with López-López and Hernández, two of the individuals who were under investigation for drug trafficking and who attended the meeting; (4) during the meeting,

---

[3] The district court indicated that Martínez-Rodríguez never filed the transcript of Quiñones's grand jury testimony. Martínez-Rodríguez v. Guevara, 551 F. Supp. 2d 142, 148 (D.P.R. 2007). At oral argument, Defendants' counsel stated that she had not seen or received copy of Quiñones's grand jury testimony during the lower court proceedings and that Martínez-Rodríguez included said transcripts for the first time on appeal. Because Martínez-Rodríguez's counsel failed to appear at oral argument, we lack the benefit of his explanation regarding the grand jury transcript. In his brief, Martínez-Rodríguez claimed "the grand jury transcripts were attached as exhibit 7 to Defendant's Statement of Facts in support of Motion for Summary Judgment." Appellant's Br. at 14. A review of the record, however, contradicts this assertion.

undercover agent González engaged in a drug-related conversation with López-López and Hernández that lasted approximately two and a half hours; and (5) at least during some part of the two and a half hours in which Hernández, López-López, and González discussed future drug transactions, Martínez-Rodríguez was seated at a table in close proximity to where the three men were seated. Additionally, Martínez-Rodríguez interacted with González, López-López, and Hernández during their meeting when he brought them drinks to their table.

On the basis of these facts, we find that a reasonable officer, faced with the events that transpired during the May 14th meeting and given the background of the drug investigation, could have concluded that Martínez-Rodríguez was involved in the conspiracy and that he was there as a bodyguard. As we stated, Defendants knew that Martínez-Rodríguez had been in contact via telephone with López-López and Hernández since February 2001. On May 14, 2001, Martínez-Rodríguez accompanied López-López to a meeting in which drug transactions were undisputably discussed. At least during part of the two and a half hours of conversation Martínez-Rodríguez was at close proximity to where the others discussed future purchases of heroin; at some point he interacted with Hernández, López-López, and González; and he left the meeting with the three men. From this, a reasonable officer could have concluded that Martínez-Rodríguez's role was more than that of an

unwitting bystander or that he was innocently escorting López-López.  Cf. United States v. Batista-Polanco, 927 F.2d 14, 18 (1st Cir. 1991) ("[I]t runs counter to human experience to suppose that criminal conspirators would welcome innocent nonparticipants as witnesses to their crimes.").

"Reasonable police investigators must be secure in the knowledge that they can present evidence of a crime to the proper charging officials without worry of suit, so long as they do not fabricate evidence or submit evidence with certain knowledge of its falsity."  Williams v. City of Albany, 936 F.2d 1256, 1260 (11th Cir. 1991).  Viewing the evidence in the light most favorable to Martínez-Rodríguez, and based on the facts he has presented to us, we cannot conclude that Quiñones intentionally or recklessly provided material false testimony to the grand jury, or that the other Defendants had knowledge of such falsity and intentionally or recklessly provided false statements or made material misrepresentations before the grand jury investigation and throughout Martínez-Rodríguez's prosecution.

Martínez-Rodríguez claims that he did not participate in the drug-related conversation and he denies that he acted as López-López's bodyguard.  Martínez-Rodríguez relies on his testimony during the criminal trial held against him.  The district court concluded that Martínez-Rodríguez failed to raise a genuine issue of material facts regarding his inability to participate in the

drug conversation because he had failed to include evidence in support of the allegations that he was talking on the phone with friends and relatives. Our review of the record reveals that Martínez-Rodríguez attached a copy of his sworn testimony during the criminal trial held against him. The transcript shows that Martínez-Rodríguez denied having heard the drug conversation and testified that he received several phone calls while he was at the restaurant and that on various occasions he left the restaurant to answer the calls. However, even if we accept that Martínez-Rodríguez spoke on his cell phone at some point during the two and a half hours in which López-López, Martínez-Hernández, and González discussed drug transactions, this would not alter our conclusion that Martínez-Rodríguez has failed to show that Quiñones made false or misleading statements before the grand jury regarding Martínez-Rodríguez's role and participation in the May 14th meeting. In fact, the testimony of undercover agent González at Martínez-Rodríguez's criminal trial is consistent with Quiñones's conclusion that Martínez-Rodríguez was providing protection during the meeting and that although Martínez-Rodríguez was not actively involved in the drug-related conversation, he appeared to be involved in the conspiracy.

The qualified immunity framework shields from liability "all but the plainly incompetent [and] those who knowingly violate the law." Morelli, 552 F.3d at 18 (quoting Malley v. Briggs, 475

U.S. 335, 341 (1986)).  Even if Quiñones erred in concluding that Martínez-Rodríguez was part of the conspiracy, or harbored a mistaken belief that Martínez-Rodríguez acted as López-López's bodyguard, there is no evidence to show that he knew these statements were false or that Quiñones "in fact entertained serious doubts as to the truth" of his statements or that the "circumstances evinc[ed] obvious reasons to doubt the[ir] veracity."  Burke, 405 F.3d at 81 (first alteration in original).  Likewise, there is no indication that the other Defendants either conspired with Quiñones to provide false statements to the grand jury or that they failed to reveal the falsity of Quiñones testimony.  Martínez-Rodríguez has therefore failed to put forth sufficient facts for a rational jury to conclude that Defendants violated his Fourth Amendment rights.

Absent evidence to support the claim that no reasonable officer in Defendants' position would have believed that Martínez-Rodríguez acted as a bodyguard and was involved in the drug conspiracy, we affirm the district court's conclusion that Defendants are entitled to qualified immunity as a matter of law.

**Affirmed**.