**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 10-2046

THOMAS GRASSIA,

Plaintiff, Appellant,

v.

DETECTIVE THEODORE L. PIERS, Individually and as a Police
Officer of the Town of Framingham; DETECTIVE WILLIAM F. DELANEY,
individually and as a Police Officer of the Town of Framingham;
JOHN DOE, Supervisor, individually and as a Police Officer of the
Town of Framingham; TOWN OF FRAMINGHAM,

Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

---

Before

Lynch, Chief Judge,

Boudin and Howard, Circuit Judges.

---

Lizabel M. Negron-Vargas on brief for appellant.
Leonard H. Kesten, Deidre Brennan Regan and Brody, Hardoon,
Perkins & Kesten, LLP on brief for appellants.

---

June 24, 2011

---

**Per Curiam**.  Plaintiff-appellant Thomas Grassia brought this action against Theodore Piers and William Delaney, detectives in Framingham, Massachusetts ("Town"), their "John Doe" supervisor and the Town itself, contending that he had been arrested and prosecuted without probable cause.  The district court granted the defendants' motion for summary judgment based on qualified immunity, finding no supported claims of constitutional or state law violations.  We affirm.

The case arises out of an ill-fated romance between Grassia and Maureen Crocker.  For two years following Crocker's break-up with Grassia, she was allegedly victimized both by threatening vandalism to her home and car and by inappropriate overtures from Grassia in a vain attempt to continue some semblance of a relationship with her.  Crocker hired a lawyer to help keep Grassia -- also a lawyer -- at bay and reported the vandalism to the Town's police department.  Piers was the detective assigned to her case, and he spent more than eighteen months tracking Crocker's reports of both anonymous harassment and known contact by Grassia. While the evidence was circumstantial, based on the coincidental timing of events Crocker suspected that Grassia was to blame for the intimidation she was enduring.  She obtained a temporary restraining order against him, although two subsequent attempts were denied.  The anonymous threats and vandalism culminated in the summer of 2004 when a brick was thrown through Crocker's office

window and a firebomb was placed in the driveway just beneath that window.

Throughout this time period, Grassia developed a strange relationship with the police. He suggested early on that they consider charging Crocker with making false reports. When questioned about his relationship with Crocker, Grassia said that he knew her only casually and denied any involvement with her, but he later admitted that he had lied and, in fact, had a "domestic situation" with her. He sought information from the police about Crocker, regularly reported her activities to them and complained that she had ruined his life, but he never reported that Crocker had harmed or threatened to harm him. Yet, in a final, ironic twist, Grassia obtained a restraining order against Crocker from the district court in Natick -- not Framingham -- based on his fear of "imminent serious physical harm" from her. He arranged for the Framingham police to effect service on Crocker.

After being served and on the advice of law enforcement officials, Crocker fled to her parents' home in Connecticut. Grassia, claiming that he did not know that process had been served, yet choosing not to verify with the police whether it had been, decided to make additional arrangements for Crocker to be served. He tracked her down in Connecticut and arranged for a local officer to serve her again there. Crocker, scared by Grassia having found her, contacted Piers. Piers consulted with other law

enforcement officials and concluded that probable cause existed to arrest Grassia for witness intimidation, Mass. Gen. Laws Ann. ch. 268, § 13B (West 2008) (prohibiting the willful attempt to interfere with a criminal investigation either directly or indirectly by bribing or intimidating a person providing information) and for criminal harassment, id. ch. 265, § 43A (prohibiting willful, malicious conduct intended to seriously alarm a specific person that objectively would cause substantial emotional distress). Piers filed an application for a complaint and an arrest warrant with the assistant clerk-magistrate of the Framingham District Court, in which he stated that Grassia "did on diverse dates between February 2003 and August 12, 2004 intimidate or otherwise interfere with a witness, . . . did willfully and maliciously engage in a series of acts over a period of time directed toward the victim," which created "an imminent threat of the commission of a crime by the defendant." The warrant issued, and Grassia was arrested.

Grassia succeeded in having the charges dismissed: the state district court dismissed the felony witness intimidation charge without prejudice for lack of jurisdiction, and, after a hearing, a state magistrate concluded "[i]nsufficient evidence presented -- no probable cause found" and dismissed the misdemeanor harassment charge. Grassia then brought this action claiming that the arrest and subsequent prosecution were accomplished without

probable cause or due process, in violation of his Fourth, Fifth and Fourteenth Amendment rights as well as several state laws. In due course, the defendants successfully moved for summary judgment on the ground that there was probable cause to arrest and prosecute Grassia, which both entitled Piers and Delaney to qualified immunity and eliminated any basis for the municipal liability and multiple state law claims.

On appeal, Grassia argues that the district court erred in entering summary judgment because the arrest warrant allegedly was based on untrustworthy information from Piers. He contends that if the district court had applied the summary judgment standard correctly and construed the evidence in his favor as it was required to do, it would have recognized a genuine dispute of material fact about whether Piers had fabricated the evidence proffered in his affidavit.

Grassia has failed to support his position by proffering evidence that casts doubt on the veracity or reliability of the lengthy, detailed police log on which Piers relied in applying for the warrant. See Acosta v. Ames Dept. Stores, Inc., 386 F.3d 5, 8 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). His objection admitted most of the defendants' statement of uncontested facts, and the few challenges Grassia has asserted are conclusory and fail to create the genuine issue of material fact needed to overcome summary judgment. See

Anderson, 477 U.S. at 248-49 (explaining that Rule 56(e) prohibits "mere allegations or denials" and requires "specific facts showing there is a genuine issue for trial"); see also Martínez-Rodríquez v. Guevara, 597 F.3d 414, 419 (1st Cir. 2010) (requiring party who bears the burden of proof at trial to "present definite, competent evidence to rebut the motion" (internal quotation omitted)); Acosta, 386 F.3d at 8-9 (explaining how competing inferences can still be resolved on summary judgment when the underlying facts are not disputed and opposing party's proffer was merely colorable).

Grassia builds his entire lack of probable cause argument on two isolated incidents -- the service of process in Connecticut and the videotaping of a car that resembled his -- which he says, when construed in his favor, demonstrate that there was no good-faith basis to believe that he was about to commit either witness intimidation or criminal harassment. Plucking two single events out of nearly two years of malicious destruction of property reports by Crocker and investigative work by Piers and Delaney, however, reflects a severe misapprehension of the law governing probable cause. See Illinois v. Gates, 462 U.S. 213, 230-31 (1983) (deciding probable cause based on the "totality of the circumstances" considering the veracity and reliability of all known information). Probable cause assesses "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," id. at 231 (quoting

Brinegar v. United States, 338 U.S. 160, 175 (1949)), to see whether a reasonable ground exists for believing a particular person to be seized is guilty. Maryland v. Pringle, 540 U.S. 366, 370 (2003) (explaining probable cause protects "citizens from rash and . . . unfounded charges of crime" while giving "fair leeway for enforcing the law" (quoting Brinegar, 338 U.S. at 176)); see also Acosta, 386 F.3d at 8-9; United States v. Brunette, 256 F.3d 14, 16 (1st Cir. 2001). We review a probable cause finding by looking at the events leading up to the arrest to determine whether an objectively reasonable police officer would believe it was likely a crime had been or was about to be committed. See Pringle, 540 U.S. at 370; Acosta, 386 F.3d at 9.

Perhaps recognizing that the warrant served as an imprimatur on the existence of probable cause, see United States v. Leon, 468 U.S. 897, 913-14 (1984) (weighing heavily the detached scrutiny of a neutral magistrate)[1], Grassia's principal claim is that Piers framed him by concealing the "crucial fact" that the threatening contact that prompted the charges and arrest warrant was the legitimate service of process in Connecticut. After

[1]The warrant provides substantial evidence of probable cause because it was based on a two-page summary of the police log, plus a thirteen page police report that included more than seventy incidents over the span of eighteen months, and it was reviewed by two neutral and detached court officers. See Gates, 462 U.S. at 236-37 n.10 (upholding warrant when all the circumstances set forth in the affidavit show a "fair probability" of criminal activity); cf. Brunette, 256 F.3d at 18 (declining to find probable cause on bare legal conclusions restating the elements of the crime).

-7-

summarizing the police log, the warrant application concluded:

> On August 13, 2004[,] Detective Piers received information that defendant has obtained the out of state whereabouts of the victim, where she had fled for her safety. Defendant did cause contact to be made after learning the whereabouts of the victim.

Grassia argues that Piers fabricated evidence in his warrant application because he omitted that Grassia did not know that service had been completed, that Grassia's contact was legal, and that the contact in Connecticut was outside the jurisdiction of the Framingham district court.

Had service in Connecticut occurred in the vacuum Grassia suggests, Piers may have understood it to have been a good-faith effort by Grassia to comport with the law; but even when viewed as an isolated event, Piers knew that Crocker was frightened by Grassia having found her in another state where she had fled to escape him, and Piers knew that the Town had told Grassia that it would effect service, and already had done so. See Forest v. Pawtucket Police Dept., 377 F.3d 52, 57 (1st Cir. 2004) (allowing police to rely on a credible complaint by a victim to find probable cause). Additionally, in his deposition Piers testified that it was irrelevant to him whether or not Grassia knew that Crocker had been served, because a victim, who theoretically is afraid of the person against whom a restraining order has been obtained, typically wants to avoid contact with that person and, therefore, would not attempt to effect service. The fact that Grassia sought

-8-

Crocker out led Piers to conclude that he was attempting to intimidate her, not protect himself. See United States v. Ramos, 629 F.3d 60, 66 (1st Cir. 2010) (considering police officer's subjective inferences that reflect his experience and expertise in evaluating probable cause determination).

Grassia also contends that it was purely speculative to assume that he was at the gas station from where three harassing phone calls were made simply because a car that resembled his was captured on surveillance film. That film was probative, however, because the undisputed record showed that Grassia owned an almost unique automobile, one of only sixteen such cars in the entire state of Massachusetts. Grassia argues that had the district court properly construed the evidence in his favor, it would have found that the car on the video could have belonged to anyone, and so its location could not have provided any probable cause for the charged crimes. Whether an inference could have been drawn that someone else owned the car, however, was irrelevant to the probable cause determination, which depended on what the facts in context objectively suggested about the likelihood of criminal activity. See Acosta, 386 F.3d at 9 (discounting competing inferences where the undisputed facts objectively gave rise to a reasonable suspicion). In the context of the ongoing investigation, it was objectively reasonable for Piers to view the video image as suggesting that Grassia made the phone calls from the filling

station.  See id.; see also Ramos, 629 F.3d at 65-66 (explaining how an individual circumstance might be innocently explained but when combined with other circumstances can give rise to a reasonable suspicion).

These two incidents objectively support a reasonable belief that Grassia was attempting to harass or intimidate Crocker. See Mass. Gen. Laws Ann. ch. 265, § 43A; id. ch. 268, § 13B. Nothing about either incident supports Grassia's bald allegations that Piers was recklessly disregarding the truth or that he otherwise seriously doubted the facts outlined in his affidavit. See Martínez-Rodríguez, 597 F.3d at 420 (citing cases for the proposition that a warrant based on a false affidavit violates the Fourth Amendment).  When these events are put into context -- the pattern of Grassia's unusual and erratic behavior, both towards Crocker and the police, and the multiple malicious destruction of property reports filed by Crocker -- the existence of probable cause is obvious.  See id. at 421 (affirming probable cause finding based on investigation); Pringle, 540 U.S. at 370-71 (emphasizing that probable cause is a fluid concept that assesses probabilities in particular factual contexts); Estrada v. Rhode Island, 594 F.3d 56, 65 (1st Cir. 2010) (allowing police to draw from their experience and training in assessing probable cause).

The facts that Piers knew and understood when he applied for the arrest warrant only needed to convey that "the charges

[were] not capricious and [were] sufficiently supported to justify bringing into play the further steps of the criminal process." Gates, 462 U.S. at 231 n.6 (quoting Jaben v. United States, 381 U.S. 214, 224-25 (1965) (emphasis omitted)).  This reasonable, practical approach to a finding of probable cause has long been the standard, and it was readily met here.  See id. at 235 (citing Locke v. United States, 7 Cranch. 339, 348 (1813), and Brinegar, 338 U.S. at 173).

Because the finding of probable cause was justified, the arrest and prosecution based on that probable cause violated neither the Constitution nor state law, entitling the individual defendants to qualified immunity.  See Martínez Rodríquez, 597 F.3d at 419 (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  And, absent any misconduct by Piers or Delaney, the claims against the Town for direct supervisory liability under § 1983 and for vicarious liability under Massachusetts law, based on the police department's training and investigation of Piers and Delaney, also dissolve.  See Kennedy v. Town of Billerica, 617 F.3d 520, 531-32 (1st Cir. 2010) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)); see also Mass. Gen. Laws Ann. ch. 258, § 2.  The judgment of the district court is **affirmed**.